# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| NANCY CINTRON,<br>　　　　　　Appellant, | DOCKET NUMBER<br>AT-0752-17-0078-B-1 |
| v. | |
| DEPARTMENT OF DEFENSE,<br>　　　　　　Agency. | DATE:  July 24, 2026 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Ed Passman, Esquire, Kevin L. Owen, Esquire, and James W. Richard, Esquire, Silver Spring, Maryland, for the appellant.

John S. Chamblee, Esquire, Jasmine Ross, Esquire, and Noee Hernandez, Esquire, Peachtree City, Georgia, for the agency.

## BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

## REMAND ORDER

The appellant has filed a petition for review of the remand initial decision, which denied the appellant's claims of retaliation for participating in protected union activity and protected equal employment opportunity (EEO) activity and affirmed the appellant's removal.  For the reasons discussed below, we GRANT

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was formerly employed as a second-grade teacher at Brittin Elementary School, an elementary school for children of military members and certain civilian employees. *Cintron v. Department of Defense*, MSPB Docket No. AT-0752-17-0078-I-1, Initial Appeal File (IAF), Tab 8 at 7, 73. Effective September 30, 2016, the agency removed her based on charges of unacceptable performance, failure to properly supervise students, failure to follow posted lesson plan, and inappropriate interactions with students. *Id.* at 69-71. The appellant subsequently filed an appeal in which she alleged, inter alia, that the agency retaliated against her for her protected EEO and union activities. IAF, Tab 1 at 7.

After holding the appellant's requested hearing, the administrative judge issued an initial decision sustaining the appellant's removal. IAF, Tab 37, Initial Decision (ID). The appellant petitioned for review of the initial decision, and the Board issued a Remand Order, which affirmed the finding that the agency established the four charges, vacated the findings on nexus, the penalty, and the appellant's affirmative defenses of retaliation for EEO and union activities, and remanded the appeal for further adjudication of those affirmative defenses. *Cintron v. Department of Defense*, MSPB Docket No. AT-0752-17-0078-I-1, Remand Order (April 2, 2024). In the Remand Order, the Board ordered the administrative judge to instruct the parties on the correct standards of proof for the claims of EEO reprisal and reprisal for union activity and provide them with an opportunity to further develop the evidence on those issues. *Id.* at 8-9. As to the claim of reprisal for union activity, it ordered the administrative judge to determine whether the appellant established by preponderant evidence that her

protected activity was a contributing factor in her removal and, if so, whether the agency proved by clear and convincing evidence that it would have removed the appellant in the absence of her protected activity. *Id.* at 8. The Board also instructed the administrative judge that if she denied the appellant's claims of EEO reprisal and reprisal for union activity, she could adopt her original findings regarding nexus and penalty. *Id.* at 9.

On remand, the administrative judge afforded the parties an opportunity to engage in discovery and scheduled a supplemental hearing on the remand issues. *Cintron v. Department of Defense*, MSPB Docket No. AT-0752-17-0078-B-1, Remand File (RF), Tabs 4-5. After the appellant withdrew her request for a supplemental hearing, the administrative judge issued a remand initial decision based on the written record that again denied the appellant's claims of EEO reprisal and reprisal for union activity. RF, Tab 14, Remand Initial Decision (RID). Specifically, she found that the appellant proved that her protected union activity was a contributing factor in her removal and that the agency established by clear and convincing evidence that it would have removed the appellant in the absence of her union activity. RID at 3-11. She also found that the appellant failed to prove by preponderant evidence that her prior EEO activity was a motivating factor in the agency's decision to remove her. RID at 13-14. Lastly, the administrative judge adopted her original findings regarding nexus and penalty. RID at 14.

The appellant has filed a petition for review of the remand initial decision, arguing that the administrative judge erred in finding that the appellant did not establish her claims of retaliation for union activity and prior EEO activity. Remand Petition for Review (RPFR) File, Tab 1 at 5-16. Specifically, she argues that the administrative judge did not consider or properly weigh the evidence of retaliation and erred in not making any credibility findings on these issues. *Id.* at 8-17. The agency has filed a response, and the appellant has replied. RPFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

We vacate the administrative judge's finding that the agency proved by clear and convincing evidence that it would have removed the appellant in the absence of her protected union activity and remand the claim for further adjudication.

On review, the appellant challenges the administrative judge's finding that the agency proved by clear and convincing evidence that it would have removed the appellant in the absence of her union activity.[2]  RPFR, Tab 1 at 8-14. Specifically, the appellant argues that the administrative judge erred when she did not consider or properly weigh all the evidence, including evidence that fairly detracts from the conclusion that the agency met its burden.  *Id.*  She also argues that the administrative judge erred in not making credibility findings on this issue.  *Id.* at 16-17.  For the following reasons, we agree with the appellant.

An affirmative defense of reprisal for participation in union-related activities under 5 U.S.C. § 2302(b)(9)(B) is analyzed under the burden-shifting standards set forth in section 1221(e).  *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015).  Once the appellant makes a prima facie showing of reprisal for protected activity, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected activity.  *Id.*, ¶ 14.  In determining whether the agency has met this burden, the Board will consider all the relevant factors, including the following:  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated.  *Id.* (citing *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed.Cir.1999)).  The Board does not view these factors as discrete elements, each of which the agency must prove by clear

---

[2]  On review, neither party challenges the administrative judge's finding that the appellant established a prima facie case of retaliation for engaging in protected union activity.  RID at 3-8.  We discern no basis to revisit that finding.

and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Alarid*, 122 M.S.P.R. 600, ¶ 14. The Board must consider all the evidence, including evidence that fairly detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

*We decline to disturb the administrative judge's finding regarding the first Carr factor.*

In considering the first *Carr* factor in the remand initial decision, the administrative judge relied on her finding in the prior initial decision, which was affirmed by the Board on petition for review, to conclude that the strength of the agency's evidence in support of the removal favors the agency. RID at 9. The appellant does not challenge this finding on review, and we discern no reason to disturb the administrative judge's finding.

*On remand, the administrative judge must consider all relevant evidence regarding the second and third Carr factors.*

Regarding the second *Carr* factor, the appellant argues on review that the administrative judge did not consider or properly weigh the evidence she presented in support of her claim that the proposing official harbored anti-union and retaliatory animus against the appellant because she was the sole union representative at Brittin Elementary. RPFR File, Tab 1 at 8-11. In finding that the second *Carr* factor weighs in favor of the agency, the administrative judge only cited the proposing and deciding officials' declarations, in which they deny that they retaliated against the appellant. RID at 9; RF, Tab 12 at 14, 17. The administrative judge then concluded that "[w]hile some institutional bias may have existed due to [the proposing official's] knowledge of the appellant's protected union activity, I find no other motive to retaliate existed, and thus, any motive to retaliate, if it exists, is minimal." RID at 9.

An administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Marques v.*

*Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). However, an initial decision must identify all material issues of fact and summarize the evidence. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). As explained below, we agree with the appellant that some of the evidence not addressed by the administrative judge appears to be relevant and significant to the degree of retaliatory motive and could support a finding that the agency officials had a motive to retaliate. Thus, we find that the administrative judge erred in failing to fully consider this evidence and failing to make credibility findings in the first instance.

In the remand proceeding below and on review, the appellant pointed to her hearing testimony and the testimony of four witnesses that the proposing official, who was the principal of Brittin Elementary, did not like the union, discouraged employees from engaging in union activity, and treated the appellant less favorably than other teachers because of her union activity and role as the union representative.[3] RF, Tab 11 at 5, 14, 17-18; RPFR File, Tab 1 at 9-11. For instance, the appellant testified that in August 2014, during the proposing official's first staff meeting after arriving at the school, the appellant introduced herself as the union representative and the proposing official said, "she didn't have any use for the union." Hearing Transcript (HT) at 416:1-417:19 (testimony of the appellant). Another teacher, A.B.-D., also testified that after the appellant introduced herself as the union representative, the proposing official "got a little bit colder" and said, "I don't have any use for the union and I don't like the union." HT at 828:12-17 (testimony of A.B.-D.). This testimony was corroborated by the testimony of another teacher, S.M., that "[the proposing

---

[3] The appellant submitted a copy of the hearing transcript with her petition for review in *Cintron v. Department of Defense*, MSPB Docket No. AT-0752-17-0078-I-1. PFR File, Tab 3 at 30-274. At no point in that proceeding or in the proceedings on remand has the agency objected to the accuracy of that transcript. For ease of reference, we have cited to that transcript rather than the official hearing recording.

official] was always very antagonistic towards the union every time it was brought up" and "when [the proposing official] introduced herself to us, she made it very clear that she did not like the union in her remarks because she encouraged us to come to her . . . . and not to go to the union" and said "we can keep everything in-house and we don't need to go anywhere else to fix any of our issues." HT at 773:6-21, 778:6-20 (testimony of S.M.). Another teacher, A.H., also testified that at the first staff meeting, "[the proposing official] said something to the effect that she had . . . no use for unions, but it was said directly to [the appellant]." HT at 910:6-911:2 (testimony of A.H.). S.M. also testified that "[the appellant], as the union rep, would have to go to [the proposing official] and, you know, tell her [w]hat the [Master Labor Agreement (MLA)] stated . . . . [a]nd . . . she didn't like that" and "[the proposing official's] attitude towards the union just became worse and worse and worse. Every time the MLA was brought up at a faculty meeting or anything about [the] union was brought up, you just knew that that's not something you wanted to do." HT at 775:22-776:10 (testimony of S.M.).

As to the appellant's union activity as the union representative, the appellant testified that in the fall of 2014, in the presence of the proposing official and other administrators, she gave the Interim Director of Domestic Dependent Elementary and Secondary Schools a list of concerns from the teachers that were happening at the lower level and had gone unresolved for years. HT at 446:11-447:21, 448:8-17 (testimony of the appellant). She also testified that as the union representative she was supposed to meet with the proposing official weekly regarding informal grievances and concerns the union had or about any violations of the MLA. HT at 425:9-22 (testimony of the appellant). For instance, on October 29, 2014, she and another teacher, L.P., who documented the meetings, met with the proposing official to ask whether it was permissible for teachers to use instructional materials other than those provided by the agency. HT at 420:2-421:2 (testimony of the appellant);

IAF, Tab 30 at 62. The appellant testified that during this conversation "[the proposing official] was very aggressive. She was angry. . . . [S]he became super defensive . . . . [S]he started raising her voice . . . . She felt like I had a hidden agenda." HT at 422:21-423:18, 424:13-15 (testimony of the appellant).

The appellant then testified that on November 4, 2014, she and L.P. met with the proposing official again to discuss union issues, including any policy changes that might violate the MLA, and that during the meeting "[the proposing official] became so aggressive that she . . . put her hands on the table and she lunged at me and scared the heck out of me." HT at 425:8-427:13-18 (testimony of the appellant); IAF, Tab 30 at 28-29. L.P. corroborated this testimony, testifying that during the meeting "[the appellant] asked [the proposing official] a question, [the proposing official] slammed her hands down on the table and she leaned over and she was lunging toward [the appellant]." HT at 870:9-12 (testimony of L.P.). L.P. testified that the appellant spoke in a regular tone when she asked the proposing official the question and that "[the proposing official's reaction] concerned me greatly, because I didn't understand why [the proposing official] was lunging towards [the appellant] when all [she] was bringing before [the proposing official] were the concerns of the staff." HT at 870:21-872:20 (testimony of L.P.). L.P. further testified that she believed the proposing official's attitude and demeanor towards the appellant, "was because [the appellant] was the union rep." HT at 874:3-13 (testimony of L.P.).

On January 15, 2015, the appellant emailed the assistant principal, who was her first-level supervisor at the time, and requested that a third party attend her meetings with the proposing official because "[the proposing official] has a difficult time controlling her temper when I share my views" and "I have a concern about [her] hostile behavior towards me." IAF, Tab 30 at 26. On February 2, 2015, the appellant forwarded that complaint to the union president, the Interim Director, and other management officials including the assistant principal and informed them that the proposing official denied her request for a

third party, that the proposing official was continuing to be hostile towards the appellant, and that the appellant felt she had to stop speaking "[t]o safeguard [her] safety." *Id.*

A.B.-D. also testified that beginning in December 2014, shortly after learning of the appellant's role as the union representative, the proposing official began attending second grade collaboration meetings and that over time her behavior towards the appellant in those meetings became "increasingly more hostile." HT at 831:4-16 (testimony of A.B.-D.). Specifically, A.B.-D. testified that "[the proposing official] was very disrespectful to [the appellant], raised her voice at her, wouldn't let her speak, [and] cut her off" and "I did not see [the proposing official] treat [another teacher T.L.] the same as she treated [the appellant]. [T.L. was] treated better than [the appellant] . . . . [N]othing [the appellant] could do was right." HT at 831:21-832:1, 833:11-15 (testimony of A.B.-D.). She further testified that this treatment worsened and during a collaboration meeting in August 2015 "[the proposing official] asked [a] question, and [the appellant] asked for clarification, and [the proposing official] put her hands on the table and stood up and kind of lunged at . . . [the appellant]." HT at 836:1-8 (testimony of A.B.-D.). A.B.-D. further testified that the proposing official's behavior towards the appellant during the weekly collaboration meetings continued in the 2015-2016 school year and "it became more of [the proposing official] want[ing] to see if she could . . . 'get her,' catch [the appellant] in doing something wrong." HT at 836:14-17, 837:3-10 (testimony of A.B.-D.). The proposing official did not specifically deny or rebut this testimony; however, she testified that "[the appellant] was hostile and she would derail the collaborations." HT at 174:3-4 (testimony of the proposing official).

S.M. further testified that during collaboration meetings the proposing official would often treat the appellant disparately stating, "everything [the appellant] said, [the proposing official] found fault with. And didn't matter if

[the appellant] . . . said the same thing using different words that the other second-grade teachers said. [The proposing official] would say that it was wrong. And it was just bizarre to watch because it just did not matter what [the appellant] said, [the proposing official] just disagreed with her." HT at 794:12-795:4, 799:15-800:1 (testimony of S.M.). S.M. added that "this was the norm" and that she often witnessed the proposing official raise her voice at the appellant and that "[o]ne time, [the proposing official] even got up and slammed her hands on the table, and kind of lunged at [the appellant]." HT at 795:8-10, 799:21 (testimony of S.M.). When asked if the appellant did anything to provoke the proposing official's treatment, S.M. testified that "[the appellant] did not do anything. She . . . never raised her voice. She never questioned [the proposing official's] authority. She always did, you know, as she was told and tried to answer any question that was raised." HT at 801:22-802:5 (testimony of S.M.). Lastly, she testified that "other teachers would do exactly what [the appellant] was doing and not be treated that way. I could do was [sic] [the appellant] was doing, and I wouldn't be treated the way [the appellant] was treated. So the only . . . reason that I could say that it was because she was our union rep." HT at 802:9-15 (testimony of S.M.). When asked how she knew it was the appellant's union activity that caused the proposing official to be hostile towards the appellant, rather than because the appellant did not work with the proposing official as well as S.M., S.M. stated, "[b]ecause . . . . even if [the appellant] had done everything that I did, it just didn't matter . . . . [The appellant] was a special case." HT at 822:4-15 (testimony of S.M.).

As to the proposing official's disparate treatment towards the appellant, L.P. testified that when the appellant spoke at staff meetings, "[the proposing official would] become very defensive . . . . She would raise her voice. Her tone would become harsh . . . . She didn't do that to anyone else" despite that "[t]hey were the same type of questions everyone else was asking." HT at 877:3-15 (testimony of L.P.). When asked if the proposing official's behavior towards the

appellant changed after union meetings, L.P. testified that "[the appellant] became the target . . . . [The proposing official] would do more observations." HT at 877:20 (testimony of L.P.).

The appellant also pointed to testimony that the proposing official treated the appellant disparately during classroom observations. RPFR, Tab 1 at 11. Specifically, the proposing official testified that it was not her practice to interrupt teachers in front of their students if they said something incorrect because that would be disruptive and undermine the teacher. HT at 209:16-210:11 (testimony of the proposing official). However, the appellant and S.M. testified that during the classroom observations at issue in the proposed removal, the proposing official regularly interrupted the appellant's class to tell her in front of her students that she was incorrect and was otherwise disruptive. HT at 519:20-521:12, 524:1-15, 533:3-22 (testimony of the appellant), 782:2-783:3, 784:12-785:8 (testimony of S.M.).

In addition to the above testimony, the appellant pointed to her 2014-2015 performance appraisal as evidence of retaliation. RPFR, Tab 1 at 9-10; IAF, Tab 13 at 23-25. Specifically, the assistant principal and the proposing official, who were the appellant's first and second-level supervisors, respectively, gave her a rating of "unacceptable" in the critical element of maintaining effective working relationships with students, administrators, staff, and parents. IAF, Tab 13 at 23. They also commented that the appellant "needs improvement in the area of maintaining positive relationships with administration" and that "[the appellant] often bypasses both building and district level administrators starting at the Headquarters level to resolve school level issues." *Id.* at 25. The appellant testified that from 2014 to 2015, the only issues she escalated above the local level were union issues, including the issues she raised to the Interim Director. HT at 441:18-447:21; 475:6-476:10 (testimony of the appellant). On the other hand, when the assistant principal was asked about this comment in the appraisal and whether the appellant's complaints were about her and the proposing official,

she stated "I'm not aware of any complaints about me or [the proposing official]. I'm talking about . . . building-level issues, grade-level issues, issues about curriculum," although she could not recall specific examples of when the appellant bypassed administrators on these issues. HT at 373:13-374:15 (testimony of the assistant principal). However, contrary to this testimony, the assistant principal was copied on the appellant's February 2, 2015 complaint to the Interim Director, the union, and other management officials, wherein she complained about the proposing official's hostility towards her during collaboration meetings. IAF, Tab 30 at 26.

As for the agency's evidence, the proposing official submitted a declaration wherein she denied that she retaliated against the appellant and stated that she had "no reason to be concerned" about the appellant's protected activity. RF, Tab 12 at 14-15. However, the proposing official did not specifically address or rebut the substantial testimony discussed above concerning her alleged anti-union and retaliatory animus and her disparate treatment of the appellant based on her union activity. In its close of record brief, the agency argues that the proposing official could not have harbored retaliatory animus against the appellant for her complaint in the fall of 2014 to the Interim Director because the proposing official was not directly implicated in the complaint since it involved concerns from the teachers that had allegedly gone unresolved for years and the proposing official had just joined the school in 2014. *Id.* at 9-10. We do not find this argument persuasive. At a minimum, the proposing official was directly implicated in the appellant's February 2, 2015 complaint to the Interim Director and others because the appellant alleged that the proposing official's hostility towards her during collaboration meetings was so severe that she feared for her safety. IAF, Tab 30 at 26.

Moreover, we have found that "[t]hose responsible for the agency's performance overall . . . may well be motivated to retaliate even if they are not directly implicated by the disclosures . . . as the criticism reflects on them in their

capacities as managers and employees." *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65 (quoting *Whitmore*, 680 F.3d at 1370); *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29 (same). As discussed at length above, several witnesses testified that the proposing official, who was the principal of the school, did not like the union and discouraged employees from bringing complaints or criticisms about her or the school's administration to the union or the appellant, as the union representative, because she essentially wanted to avoid drawing outside attention to the school. It is also undisputed that the assistant principal and the proposing official were aware that the appellant continued to engage in union activity in her role as the union representative. RF, Tab 12 at 7. Similarly, several witnesses testified that there was tension between the proposing official and the appellant when the appellant engaged in union activity, which the proposing official did not deny or rebut. This evidence could support a conclusion that the second *Carr* factor weighs against the agency. Because the administrative judge did not fully consider this evidence or make credibility findings in the first instance as to whether and to what extent the assistant principal and proposing official were motivated to retaliate against the appellant based on her union activity, we find it appropriate to remand this issue.

Regarding the third *Carr* factor, the appellant also argues on review that the administrative judge did not consider or properly weigh the evidence she presented in support of her claim that the agency did not take similar action against employees who did not engage in protected activity under 5 U.S.C. § 2302(b)(9)(B), but who are otherwise similarly situated. RPFR File, Tab 1 at 11-14. In finding that the third *Carr* factor is neutral, the administrative judge considered the proposing official's declaration, in which she stated that she had issued one other removal letter to a "DoDEA employee who displayed unacceptable performance that was similar to that demonstrated by [the appellant]." RID at 10; RF, Tab 12 at 14. However, because the record was silent as to whether that employee did not engage in protected activity under

5 U.S.C. § 2302(b)(9)(B), the administrative judge concluded that the agency's comparator evidence was insufficient. RID at 10. The agency does not challenge that finding on review, and we agree with it.

While the agency does not have an affirmative burden to produce evidence concerning each and every *Carr* factor, the Federal Circuit has held that, to the extent such evidence exists, the agency is required to come forward with all reasonably pertinent evidence relating to *Carr* factor three and the failure to do so "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Whitmore*, 680 F.3d at 1374-75. Moreover, because it is the agency's burden of proof, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Id.* Here, in addition to failing to identify whether the "DoDEA employee" engaged in any union activity, the agency also failed to identify the employee's position, if the proposing official was also in her chain of command, the degree of her misconduct, and whether such evidence exists. Thus, we agree with the administrative judge that the third *Carr* factor cannot weigh in favor of the agency.

In addition, on review, the appellant argues that the administrative judge failed to consider other relevant comparator evidence that suggests that the third *Carr* factor weighs in favor of the appellant. RPFR File, Tab 1 at 11-13. Specifically, below and on review, the appellant pointed to the testimony of a fellow second-grade teacher, T.L., who also reported to the proposing official and testified that the proposing official also counseled her about not using the reading material correctly, but that the deficiency was resolved because the proposing official provided feedback on how to correct the issue, demonstrated her expectations by presenting the lesson to T.L.'s students, and followed up with T.L. to ensure that she was using the materials correctly. RF, Tab 11 at 19; RPFR File, Tab 1 at 11-13; HT at 398:7-399:12 (testimony of T.L.). The appellant alleges that T.L. was a "non-whistleblower" and was treated more favorably by

the proposing official than the appellant was because she was given helpful feedback and assistance to correct her performance problem and was not disciplined. RPFR File, Tab 1 at 11-13. The appellant also points to the testimony of the four other teachers, which she alleges corroborates her claim that she was treated worse than similarly situated non-whistleblower employees. *Id.* at 12-13; HT at 773-779, and 813-814 (testimony of S.M.), 828-836 (testimony of A.B.-D.), 860, 870-873, 880-881, and 887-888 (testimony of L.P.), 910-911, and 912-920 (testimony of A.H.). Because resolution of this issue could involve the assessment of hearing testimony, the administrative judge is in the best position to address it. On remand, the administrative judge must address whether T.L. is an appropriate comparator under *Carr* factor three, including determining whether she is a non-whistleblower. *See Whitmore*, 680 F.3d at 1373 (noting that "[d]ifferences in kinds and degrees of conduct between otherwise similarly situated persons within an agency can and should be accounted for to arrive at a well-reasoned conclusion regarding *Carr* factor three.").

*Instructions on remand regarding the Carr factors*

Based on the above, we conclude that it is necessary to conduct a new analysis of the *Carr* factors. The administrative judge is in the best position to do so, having heard the live testimony. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 19. Accordingly, we remand the appeal for a new finding as to whether the agency proved by clear and convincing evidence that it would have separated the appellant in the absence of her protected activity. *See, e.g.*, *Mithen v. Department of Veterans Affairs*, 119 M.S.P.R. 215, ¶¶ 23-24 (2013) (remanding the case to the administrative judge for an assessment of the clear and convincing issue, including rendering credibility determinations); *Massie v. Department of Transportation*, 118 M.S.P.R. 308, ¶¶ 7-8 (2012) (remanding the case for consideration of the evidence as a whole under *Whitmore*).

On remand, the administrative judge shall examine, under *Whitmore*, whether the agency met its burden of showing by clear and convincing evidence

that it would have removed the appellant in the absence of her protected union activity. In conducting her analysis, the administrative judge shall make explicit credibility determinations regarding key witnesses (especially the proposing and deciding officials and the assistant principal); reconsider all record evidence relevant to *Carr* factors two and three (including whether and to what extent the proposing and deciding officials and the assistant principal had a motive to retaliate against the appellant and whether and to what extent they disciplined similarly situated non-whistleblower employees accused of similar misconduct); and make thoroughly reasoned findings that address both the evidence supporting her conclusions and the countervailing evidence. *See Whitmore*, 680 F.3d at 1374-76. In the new initial decision, the administrative judge may adopt her findings that the appellant established a prima facie case of retaliation for engaging in protected union activity and that *Carr* factor one weighs in favor of the agency.

We also vacate the administrative judge's finding that the appellant did not prove by preponderant evidence that her prior EEO activity was a motivating factor in her removal, and we remand the claim for further adjudication.

On review, the appellant also challenges the administrative judge's finding that the appellant failed to prove by preponderant evidence that her prior EEO activity was a motivating factor in her removal. RPFR File, Tab 1 at 14-17. Specifically, the appellant argues that the administrative judge erred when she found that the appellant only presented evidence that the relevant management officials had knowledge of her protected EEO activity and that she had failed to identify any other evidence of retaliation. RID at 13; RPFR, Tab 1 at 14-17. The appellant also argues that the administrative judge erred in not making credibility findings as to the proposing and deciding officials' retaliatory motive, especially in light of the substantial testimony discussed above concerning the proposing official's alleged increased scrutiny and hostility towards the appellant following her protected activity. RPFR, Tab 1 at 16-17. For the following reasons, we

agree with the appellant that the administrative judge erred in not fully considering the relevant evidence of retaliatory motive and not making the necessary credibility findings.

In *Pridgen v. Office of Management and Budget*, we clarified the evidentiary standards and burdens of proof for EEO retaliation claims. *Pridgen*, 2022 MSPB 31, ¶¶ 21-25, 30. The appellant bears the initial burden of proving by preponderant evidence that the prohibited consideration was a motivating factor, i.e., that it played "any part" in the agency's action. *Id.*, ¶ 21. Evidence supporting an inference that retaliation was a motivating factor in an employment action may be direct or circumstantial. *Id.*, ¶ 24. Circumstantial evidence may include the following: (1) suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) evidence, whether or not rigorously statistical, that employees similarly situated to the appellant other than in the characteristic on which an employer is forbidden to base a difference in treatment received systematically better treatment; and (3) evidence that the agency's stated reason for its action is unworthy of belief, a mere pretext for discrimination. *Id.* Such evidence must be considered as a whole in determining whether the appellant has shown by preponderant evidence that retaliation was a motivating factor in the personnel action. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 30-31 (2016), *clarified by Pridgen*, 2022 MSPB 31, ¶¶ 23-24.

On review, the appellant argues that the administrative judge ignored evidence of retaliation, including evidence of suspicious timing, and that the agency's reasons for disciplining her are unworthy of belief and pretextual. RPFR File, Tab 1 at 14-16. Specifically, below and on review, the appellant points to evidence that before her EEO activity the agency did not raise or document significant concerns with her performance and conduct. RF,

Tab 11 at 21-22; RPFR File, Tab 1 at 14-16. However, shortly after the appellant filed an informal EEO complaint on March 24, 2015, against the proposing official, the assistant principal, and the superintendent, the proposing official began disciplining her and scrutinizing her performance. RF, Tab 11 at 6-7; RPFR File, Tab 1 at 14-16. For instance, on May 4, 2015, the proposing official issued the appellant a 5-day suspension, and on May 26, 2015, she issued the appellant an "unacceptable" rating on a performance element in her 2014-2015 performance appraisal and a letter of reprimand. RF, Tab 11 at 6-7; RPFR File, Tab 1 at 14-16.

The appellant also testified that after she filed her formal EEO complaint on July 9, 2015, the proposing official's poor treatment of her in collaboration meetings and classroom observations worsened, which was corroborated by A.B.-D. and S.M. RF, Tab 11 at 7, 21; RPFR File, Tab 1 at 15-16; HT at 519:20-521:12, 524:1-15, 533:3-22 (testimony of the appellant); IAF, Tab 30 at 65, 67. Also, on September 14, 2015, the proposing official issued the appellant a written counseling; on January 6, 2016, she issued the appellant a 2-day suspension; on January 28, 2016, she placed the appellant on a performance improvement plan; on May 9, 2016, she gave the appellant an "unacceptable" rating on three elements in her 2015-2016 performance appraisal; and on July 27, 2016, she proposed the appellant's removal, which ultimately led to the appellant's removal on September 30, 2016. RF, Tab 11 at 7-8; RPFR File, Tab 1 at 14-16. The administrative judge did not consider this evidence. Accordingly, we also remand the appellant's claim of retaliation for protected EEO activity. On remand, the administrative judge shall assess all relevant evidence of retaliation, make appropriate credibility and factual findings in the first instance, and make a new finding as to whether the appellant proved that her removal was the result of retaliation for her protected EEO activity, pursuant to *Pridgen*.

Because the administrative judge held a hearing and correctly informed the parties of their respective burdens of proof with respect to the affirmative defenses of reprisal for EEO and union activities, we deem the record complete. However, the administrative judge has the discretion to allow additional discovery and to hold a supplemental hearing prior to issuing a new remand initial decision, if she finds it necessary to do so for proper adjudication. Moreover, if the appellant fails to prove both her affirmative defenses, the administrative judge may adopt her original findings regarding nexus and the penalty, if appropriate. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 11 (2016). However, if any argument or evidence on the appellant's affirmative defenses affects the administrative judge's analysis of nexus and the penalty, she should address such argument or evidence in the remand initial decision.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:      _____
                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.